UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT NORTH CAROLINA

In re:                                    )
                                          )
        WILLIAM J. PENNINGER              )        Case No.        10-52061
        LISA M. PENNINGER                 )        Chapter 7
                                          )
              Debtors                     )
_____)

MEMORANDUM OF BANKRUPTCY ADMINISTRATOR
IN SUPPORT OF MOTION TO DISMISS

1.    <u>Issue presented and Introduction.</u>

        Whether granting relief to the Debtors under Chapter 7 would be an abuse of the
provisions of that Chapter under 11 U.S.C. §707(b)(1) and (3), so that the Debtors' case should
be dismissed under those provisions?

        In this case, the Bankruptcy Administrator contends that the Debtors have the ability to
pay a substantial dividend to their unsecured creditors in a Chapter 13, after adjustment of
certain expenses.

2.    <u>Facts Presented.</u>

        This Chapter 7 petition was filed by the Debtors on October 29, 2010 .  The Debtors are
above median income Debtors.  Mr. Penninger is employed at Hilbish Motor Company.  Ms.
Penninger is employed at Carolina's Health Care as a nurse.   The Debtors have two children.

        Both Debtors' income fluctuates somewhat; Mr. Penninger receives some commissions
based on sales, in addition to his base salary, Ms. Penninger is paid by the hour, and does not
always work the same hours in a pay period.  Post petition, their income has slightly increased
due to more sales for Mr. Penninger and a small raise for Ms. Penninger.

         At the time of the filing, the Debtors owned several vehicles and a residence. On the
petition, all property was to be retained.  However, after the filing, the Debtors have damaged
one vehicle, and one vehicle is inoperable.  So, they have acquired other used vehicles for cash.

        Also, post-petition, the Debtors, who are separated, have decided to surrender their
residence.  The debtors made few, if any post-petition payments on their residence.  Upon
information and belief, Ms. Penninger believes that her rent will be around $550.00 a month, as
compared to a $1900 mortgage payment; Mr. Penninger has been paying his parents

        The Debtors have admitted that their debts are "primarily consumer debts."  <u>Request for
Admissions, Exhibit 4.</u>

On February 1, 2011, the Bankruptcy Administrator filed the instant motion to dismiss case pursuant to Sections 707(b)1) and (3).

3.    Argument

A. Introduction.

Section 707(b)(1) of the Bankruptcy Code provides that a court may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be "an abuse." Section 707(b)(3), applicable to this case, provides:

> **(3)** In considering under paragraph (1) whether the granting of relief would be an abuse
> of the provisions of this chapter in a case in which the presumption in subparagraph
> (A)(I) of such paragraph does not arise or is rebutted, the court shall consider–
>
> **(A)** whether the debtor filed the petition in bad faith; or
>
> **(B)** the totality of the circumstances (including whether the debtor seeks to reject a
>  personal services contract and the financial need for such rejection as sought by the
> debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C.A. § 707 (2008).  This section is generally accepted to be a codification of pre-BAPCPA case law.  In re Wright, 364 B.R. 640 (Bankr. N.D. Ohio 2007). As amended by BAPCPA, the Bankruptcy Code does not incorporate a presumption of granting the relief sought by the Debtor, and abuse, if found, is not required to be "substantial."  11 U.S.C. § 707(b)(1).   In the Fourth Circuit, the leading case on the "totality of the circumstances" test for abuse is In re Green, 934 F. 2nd 568 (4th Cir. 1991).  In that case, the Fourth Circuit identified the following factors to be evaluated in the "totality of the circumstances" approach:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity,
> disability, or unemployment;
>
> (2) Whether the debtor incurred cash advances and made consumer purchases far in
> excess of his ability to repay;
>
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*Id [934 F.2nd].* at 572 (citations omitted). The Fourth Circuit also stated "that the majority of the cases hold that the debtor's ability to repay is the primary factor to be considered."

In re Beitzel 333 B.R. 84, 88 (Bankr. M.D.N.C. 2005). Applying each of these factors to this case, beginning with the "primary" factor, the BA contends as follows.

## B. Ability to repay creditors.

In most cases, the Debtor's ability to repay creditors is measured by what the Debtor might pay in a hypothetical Chapter 13 case. " Evaluation of the debtor's ability to pay in the 707(b) context involves determining the amount that unsecured creditors would receive in a hypothetical Chapter 13 case involving the debtor." In re Martin,No 08-11698 (Bankr. M.D.N.C. 2009)(Stocks, J).

Making an analysis of a debtor's ability to pay under section 707(b) involves examining the debtor's future income and future expenses. *See In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989); *Waites v. Braley,* 110 B.R. 211, 214-15 (E.D.Va.1990). This is particularly true where, as in the present case, a debtor has stable income. The ability of a debtor to repay his or her creditors generally is measured by "assessing how much disposable income a debtor would be able to pay his or her unsecured creditors under a three to five year Chapter 13 plan." *In re DeRosear,* 265 B.R. 196, 203-04 (Bankr.S.D.Iowa 2001). A debtor's disposable income is determined in accordance with the definition contained in section 1325(b)(2) of the Bankruptcy Code using income and expense figures that are reasonable and accurate. *See id.* at 204.

In re McCain 2006 WL 4458679, 2 (Bankr. M.D.N.C.,2006).

In a Chapter 13 case, the starting point for analysis is the B22 form. In this case, the Debtor's B22A form discloses monthly disposable income of $146.01. However, this includes $1483.27 in monthly payments on a residence that the Debtors are surrendering, and $258.38 for a vehicle the debtors no longer have.. Under In re Crittendon, No 06-10322 (Bankr. M.D.N.C. 2006)(Stocks, J) payments on secured collateral which the debtor is surrendering are treated as disposable income. See also, In re Martin, supra.; Accord, In re White 409 B.R. 330 (Bankr. D. Md. 2009). The debtors would also be entitled to deductions for the Chapter 13 administrative expense and their retirement contributions in a Chapter 13. However, it would appear that on a B22C form, calculated based on just this information as of the petition date, would result in a

large monthly disposable income – around $1500.00.[1]  If this were the Debtors' plan payment, it could result in a one hundred percent dividend to creditors, depending on deficiency claims.  Therefore, this calculation, after the surrender of the house, with the existing surplus, shows an ability to pay.  See In re Crawley 412 B. R. 777 (Bankr. E. D. Va. 2009)(surplus after surrender of residences gives ability to pay, case dismissed).

However, there are other factors to consider in this case.  The Debtors' financial situation has changed somewhat since filing with the surrender of the house.  Also, due to the passage of time, the Debtor's expenses have changed slightly.

To address these issues, the Debtors intend to amend their Schedules I and J.  It is most appropriate to consider the most recent amendment, as the "totality of the circumstances" under Section 707(b)(3) is analyzed as of the date of trial.  See e.g. In re Meade, 420 B. R. 291 (Bankr. W. D. Va. 2009) (household size considered at time of trial).

On Schedules I and J, as filed, the Debtors disclose monthly net income of $408.00.  This, standing alone, would provide a dividend of over 25 percent to creditors, given the amount of unsecured debt, $34,486.  As this court has stated:

> The *Mondragon* court, which examined the *Green* factors post-BAPCPA, noted that the ability of a debtor to pay at least a 25% dividend to unsecured creditors in a Chapter 13 case is not per se abuse under Section 707(b)(3). *Id.* at 6 (citing *Mestemaker,* 359 B.R. at 858). However, the court found that "a debtor's ability to repay 25% or more of his or her unsecured non-priority debts in a Chapter 13 plan is *persuasive evidence* " of abuse. *Id.* (emphasis added). The court noted that "a debtor's ability to pay is the primary factor even under pre-BAPCPA 'substantial abuse' cases." *Id.*

In re Lipford 397 B.R. 320, 328 (Bkrtcy.M.D.N.C.,2008).  Furthermore, the BA contends that this net income, even before the adjustment for the surrendered property, is understated on the account of three factors.

First, and most importantly, the Debtors are over witholding on their taxes, using zero allowances.  See Exhibit 10.  In 2011, for 2010, the Debtors received a combined federal and state refund of $7,149.00  In 2010, for 2009, they received a refund of $3899.00.  If the Debtors were to withhold at the correct amount, there would be substantial additional monies each month for unsecured creditors.  If the Debtors had correctly estimated their actual tax liability, the presumption of abuse would have arisen under Section 707(b)(2).

Second, Ms. Penninger is contributing $50.00 a month to her retirement fund.  As the Debtor is approximately 35 years old, this sum should be treated as available to unsecured creditors for 707(b) analysis, although it would be protected in a chapter 13.

---

[1]  The BA contends: deduction of net from surrendered house, $933.00, plus $350 on wrecked car; less $50.00 retirement and $60.00 administrative expense.

Pre-BAPCPA, in the context of a Section 707(b)(3) motion, repaying 401(k) loans and making retirement contributions was a factor tending to show abuse. *See, e.g., In re Behlke,* 358 F.3d 429, 436-37 (6th Cir.2004) (repayment of 401(k) loans is disposable income for purposes of determining ability to pay creditors); *In re Austin,* 299 B.R. 482, 487 (Bankr.E.D.Tenn.2003) (collecting cases which consider retirement contributions or retirement loan repayments as disposable \*330 income for 707(b) purposes). Post-BAPCPA, it appears this rule is still followed. *In re Zaporski* 366 B.R. 758, 773 (Bankr.E.D.Mich.2007).

In re Lipford 397 B.R. 320, 329 -330 (Bkrtcy.M.D.N.C.,2008).

Thirdly, the Debtors' budget appears slightly high in the areas of the retention of the vacuum, the cell phone contract, and the umbrella policy. Taking these together, a reduction of $100.00 would appear to be appropriate. As set forth below, the court may review a debtor's expenses in the context of a motion to dismiss.

These three changes add several hundred dollars a month to the Debtor's surplus net income, and support the ability to pay. Therefore, this factor tends to show abuse.

## C. Sudden Illness, Calamity, Disability or Unemployment.

With respect to this factor, the Debtors have admitted that "The Debtors' bankruptcy petition was not filed because of sudden illness, calamity, disability or unemployment." Request for Admissions, Exhibit 4. The Debtors also admitted, as to the male debtor, "The Debtor is employed and has steady employment." Id.. The Female debtor is back at work after a period of illness, during which she collected short term disability.

The BA contends that these admissions are dispositive as to this factor. Therefore, this factor tends to show abuse.

## D. Consumer purchases far in excess of ability to pay.

With respect to this factor, the Debtors has admitted that they "made purchases on credit or obtained cash advances or otherwise incurred debt in excess of their ability to pay for those purchases or to repay such advances or debt." Request for Admissions, Exhibit 4.

The BA contends that this admission, together with the Debtor's Petition, Schedules and Statements is dispositive as to this factor. Therefore, this factor tends to show abuse.

## E. Excessive or Unreasonable Family Budget.

In assessing the Debtors' budget, the court is not bound by the amounts spent or listed. "Instead, it is appropriate to consider whether the expenses claimed by a debtor can be reduced

significantly without depriving the debtor of adequate food, clothing, shelter and other necessities of life." In re Hallstrom Case No. 02-80013C-7D (Bankr. M.D.N.C. 2002)(Stocks, J).

The BA believes that the Debtors' budget is slightly high in the area of their cell phones, the unnecessary umbrella policy, and the vacuum. More importantly, the Debtors' surplus would allow for substantial payments to unsecured creditors.

In addition, the BA contends that Ms. Penninger's retirement contributions are unreasonable in light of her age, and her debts, as set forth above. Therefore, this factor tends to show abuse.

F.  Accurate Schedules and Statements.

There may be evidence of inaccurate schedules developed at trial. There appears to be an omitted creditor.  The Debtors incorrectly stated their tax accrual on their B22A means test.  Furthermore, there may be an issue as to whether the Debtors properly documented their residence in the schedules.  Despite these issues, the Debtors' schedules do not appear to be materially inaccurate.

Therefore, this factor seems to be balanced.

G.  Good Faith under Green and Section 707(b)(3)(B) .

In this matter, it appears that the Debtors incurred over $11,000 in credit card debt in the 5 months prior to filing.   The Debtors reaffirmed approximately one half of this debt, the amount charged within 90 days of filing.  This pattern of charges indicates a lack of financial good faith.  See, In re Martin 417 B. R. 354 (Bankr. M.D.N.C. 2009)(charges immediately prior to filing indicate a lack of good faith.)

Therefore, this factor tends to show abuse.

4.  Conclusion.

For the reasons set forth herein, the BA contends that allowing the Debtors to continue in Chapter 7 would constitute an abuse of the Bankruptcy Code within the meaning of Section 707(b)(3) and this case should be dismissed.

This the _15th_day of _May_, 2011.

Michael D. West, Esq.
U.S. Bankruptcy Administrator

By_s/Robert E. Price, Jr.___
Robert E. Price, Jr.
Staff Attorney
State Bar No. 9422


Of Counsel:

Office of the Bankruptcy Administrator
P.O. Box 1828
Greensboro, North Carolina 27402-1828
tel: 336.358.4179
fax:336.358.4185


CERTIFICATE OF SERVICE

This is to certify that on this date, the foregoing document was served upon the following parties
or counsel by electronic filing and/or depositing a copy in the United States mail, first class
postage prepaid, addressed as follows:


**Robert F. McLaughlin**
122 N. Ellis St.
Salisbury, NC 28144


This the _15th_day of _May_, 2011.


By_s/Robert E. Price, Jr._

Bankruptcy Administrator

Staff Attorney