UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE: )
 )  Case No. B-10-52061 C-7W
WILLIAM JONATHAN PENNINGER )
LISA MARIE PENNINGER, )
 )
          Debtors. )
_____ )

**MEMORANDUM OF DEBTORS' OBJECTION TO BANKRUPTCY
ADMINISTRATOR'S MOTION TO DISMISS**

COME NOW the debtors by and through their undersigned attorney who submit this Memorandum Objecting to the Bankruptcy Administrator's Motion to Dismiss their Chapter 7 case, said motion having been filed on February 1, 2011.

## CASE STRUCTURE

The petition was filed on October 29, 2010.

The first creditors meeting was held on December 3, 2010.

The time for filing objections to discharge was February 1, 2011.

On February 1, 2011 the Bankruptcy Administrator (hereinafter called "Administrator") filed a Motion Objecting to Discharge Pursuant to Section 707(b)(3) of the United States Bankruptcy Code.

Hearing on the Administrator's motion was held on May 17, 2011.

## ISSUES PRESENTED

1. Does the case meet the criteria for dismissal for reasons of abuse under the "totality of the circumstances theory"?

2. In determining the question of abuse, should the Court consider the post-filing financial circumstances of the debtors?

## FACTS:

The debtors are a married couple and the parents of two minor children, ages 3 and 5. In September of 2010, approximately one month before filing their petition, the

debtors separated and Mr. Penninger went to live with his parents temporarily while Mrs. Penninger remained in the marital residence. Mr. Penninger agreed to pay $350.00 per month rent to his parents. This increased to $650.00 per month beginning in February, 2011. Both Mr. Penninger and his parents expect him to move into his own residence in the near future at a cost of approximately $900.00 - $1,000.00 per month.

Mr. Penninger has been employed by Hillbish Motors as a parts counter person for approximately 12 years. He is paid $1,000.00 bi-weekly, plus commissions based on his sales. At the time of the filing of the petition, he reported monthly gross income of $3,682.00 based on the six month average preceding the filing of the petition. After withholding of 22.21% of the gross for taxes, plus insurance premiums, he had a net monthly income of $2,760.00.

Mrs. Penninger is a registered nurse who had been employed by Carolinas Healthcare Systems for approximately one year prior to the filing of the petition. She is paid on an hourly basis and her hours vary. She initially reported a monthly gross income of $5,004.00 based on the average for the six months immediately preceding the filing of the petition. After deduction for taxes at the rate of 24.66% of the gross plus other deductions, she had a net monthly income of $2,990.00. Accordingly, the parties' original projected combined net income was $5,756.00 per month.

Mrs. Penninger was out of work for a period of eleven weeks from mid-February through April 28th while being treated for depression and anxiety. She received short term disability benefits in an amount of approximately 60% of her gross income. She returned to work on a full-time basis on April 29, 2011.

The parties initially reported projected monthly living expenses in the amount of $5,348.00, inclusive of the mortgage payment in the amount of $1,483.00, Mr. Penninger's rental payment of $350.00 to his parents, and vehicle payments in the amount of $593.00 per month. Accordingly, they had net monthly income of $408.00.

Mr. Penninger possesses a 2005 Ford Freestyle on which he is still making payments. This vehicle was inoperable at the time of hearing and in need of a new transmission. Mr. Penninger is driving another vehicle which is jointly titled to him and his father. Mrs. Penninger has possessed several vehicles and been involved in at least two accidents since the time of the filing of the petition. She purchased a new vehicle the day before the hearing in this matter and will be paying approximately $350.00 per month.

On May 16, 2011, the debtors filed amended Schedules I and J. According to these amended schedules, Mr. Penninger had a monthly gross income of $4,521.00 based on income from January 1, 2011 through April 30, 2011 and Mrs. Penninger reported a monthly gross income of $4,480.00 based on wages received from October 1, 2010 through February 26, 2011. Accordingly, it would seem that Mr. Penninger's gross income increased by 22.79% while Mrs. Penninger's gross income decreased by 10.47%.

The combined monthly net income as reported on the amended Schedule I was $6,214.00.

On amended Schedule J the debtors reported monthly expenses of $2,206.00 for Mr. Penninger and $2,601.00 for Mrs. Penninger, for a total of $4,807.00, thus leaving $1,407.00 disposable income. Mr. Penninger's expenses included $650.00 monthly rental payment to his parents. Mrs. Penninger's expenses included $550.00 per month rent rather than the original mortgage payment and $150.00 per month estimated electricity and heating fuel rather than the original amount.

Although Mrs. Penninger is still living in the parties' marital residence, she has made no mortgage payment since the filing of the petition and the property is subject to foreclosure. The debtors now intend to allow the property to be foreclosed and Mrs. Penninger tentatively plans to move into a house which is being purchased by her father for $20,000.00. She has agreed to pay her father $550.00 per month rent and has made two payments prior to the hearing in this matter to reimburse her father for payments made on a loan he obtained for purchase of the property. Whether or not the property will in fact be purchased is somewhat uncertain as it is in an estate and the heirs are disputing the sales price. Nevertheless, Mrs. Penninger estimates her future monthly housing payment at $550.00 per month as indicated on her amended Schedule J.

The parties filed joint federal and state income tax returns in 2010 and received total refunds of $7,149.00 which amount is somewhat more than previous years. They qualified for the Making Work Pay Credit of $400.00 each and they itemized their returns and claimed a deduction of $9,984.00 for mortgage interest. This deduction will not be available to them in the future once the property is foreclosed and, assuming the marriage terminates in divorce by the end of 2011 as is anticipated by both parties, future returns will be filed separately.

Mr. Penninger has a 401K plan through his employer but has made no contribution to it for four years. Mrs. Penninger has 1% of gross deducted from her payment for her retirement plan.

The debtors listed six unsecured creditors, only two of which have significant debts. Two accounts to Capital One were listed with a total balance of approximately $21,200.00 and one account to Chase with an approximate balance of $10,974.00. All other debts listed were under $1,000.00 per creditor.

Mrs. Penninger executed a reaffirmation agreement in the amount of $6,725.97 with payments at the rate of $100.00 per month for the Chase debt, this amount being the total charges within 90 days of the filing of the petition. This reaffirmation agreement was approved by the Court. In light of this, only one other creditor has any significant balance.

# ARGUMENT

The totality of the circumstances theory had its origin in pre BAPCAPA law. The Fourth Circuit has adopted a five part test to determine whether or not a filing is abusive. In Re: Green, 934 F. 2nd (4th Cir 1991). Under the Fourth Circuit's "totality of the circumstances" test, to be dismissed, a Court must consider not <u>just the debtor's ability to fund a Chapter 13 plan,</u> but other factors [as well]. In Re: Siler 426 B.R. 167 (W.D.N.C., 2010).

Five factors to consider are as follows:

1. Whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment;

2. Whether the debtors incurred cash advances and made consumer purchases *far* in excess of [their] ability to pay (emphasis added);

3. Whether the debtors' proposed family budget is excessive or unreasonable;

4. Whether the debtors' schedules and statement of income and expenses reasonably and accurately reflect the [debtors'] true financial condition; and

5. Whether the petition *was* filed in good faith (emphasis added).

Although the presumption in favor of the debtors has now been eliminated, the burden of proof still falls on the administrator.

With regard to the factors listed above, the debtors note the following:

The debtors acknowledge that the petition was not filed because of sudden illness, etc. (Response to Administrator's First Request for Admissions, #3).

Although the debtors have admitted that they incurred debt for consumer purchases in excess of their ability to repay (Response to Administrator's First Request for Admissions, #5), they deny that they incurred such debt *far* in excess of their ability to repay. The debtors' scheduled unsecured debt of $34,486.00 was reasonable for their income level, albeit an amount that eventually became problematical for them after their separation. Additionally, the female debtor, facing the likelihood of an adversary proceeding challenging discharge, reaffirmed a portion of one debt, $6,725.97, the amount incurred within 90 days of filing of the petition, to be paid at the rate of $100.00 per month.

The debtors' proposed family budget is not excessive and the Administrator, although indicating he had a few reservations about it, did not seek to attack it or in any way suggest excessiveness. To the contrary, some of the debtors' expenses, as listed on Schedule J, were less than the allowances provided by the statutory "means test".

The debtors' financial schedules constitute a reasonable and accurate reflection of their financial position, both at the time of filing and at the hearing date. The Administrator made no allegations to the contrary and offered no proof that the debtors' financial condition was in any way misrepresented.

Finally, the debtors contend that their petition was filed in good faith, both objectively (i.e. with regard to a true and accurate representation of their financial condition) and subjectively (i.e. with regard to their ability to fund a Chapter 13 plan).

The debtors' original schedules indicated that they had disposable income of $408.00 at the time of filing. This amount was calculated based on the debtors' income during the six months prior to the filing of the petition and assumed that the male debtor would continue to live with his parents and the female debtor would continue living in the parties' marital residence. Subsequent to filing, the male debtor increased his income by making a concerted effort to increase his sales commission and the female debtor, who was out of work for medical reasons from mid-February until the end of April, decided to surrender her residence and to move to a more affordable house. The end result of these changes was that the debtors had $1,407.00 per month disposable income at the time of the hearing in this matter, some 6-½ months after the filing of the petition.

The debtors are compelled to admit that their financial situation at the time of the hearing was sufficient to enable them to formulate a Chapter 13 plan which would probably allow them to pay all creditors in full (assuming little or no deficiency after foreclosure) within sixty months. Accordingly, if this case had been filed on the date of hearing, it would have had to been filed as a Chapter 13 case, and filing as a Chapter 7 case would clearly be abusive.

The debtors contend, however, that logic dictates that the issue of "good faith" should be based on their financial situation at the time of filing of the petition. The debtors acknowledge that their appears to be a split of authority on this issue, with the majority of cases favoring inclusion of post-petition events, but would argue that a petition originally filed in good faith cannot degenerate into a bad faith filing based on post-petition events either not foreseeable (i.e. Mr. Penninger's increased commission income) or by virtue of making a prudent decision (i.e. Mrs. Penninger's willingness to surrender her residence in favor of far more spartan, albeit affordable, quarters). To find "bad faith" under such circumstances would be to penalize the debtors for a good work ethic (in Mr. Penninger's case) and prudence (in Mrs. Penninger's case).

The undersigned could find no Fourth Circuit cases specifically limiting consideration to the petition date. In In Re: Parker, 2009 Bank. Lexis 180 (E.D.N.C. 2009), however, Judge Small, in denying the Trustee's motion to dismiss under the Section 707(b)(3) "totality of the circumstances" theory, appeared to find that a change in family size from the petition date to time of hearing was irrelevant. "While the Parkers no longer have custody of two children for whom they were temporary guardians, they did have those children *on the petition date* (emphasis added) and the scheduled expenses are reasonable for a family of five." Presumably that same schedule of expenses might

be unreasonable for the debtors' family at the time of hearing, a fact which Judge Small apparently ignored.

The debtors deny that the plain language of Section 707 (b)(3)(B) <u>requires</u> the court to consider post-petition events, although some courts have found that the reference to "rejection of a personal services contract" implies post-petition analysis. Such rejection could just as easily occur simultaneously with the filing of the petition. Nor does the fact that the statute refers to the "granting of relief" necessarily mandate the inclusion of post-petition events as such phraseology can just as easily relate back to the filing of the petition. To read inclusion of post-petition events into the statute is unwarranted.

## **CONCLUSION**

In light of the above, the debtors respectfully contend that their petition was filed in good faith and that granting of relief would not be abusive. Even if the Court concludes that the debtors' post-petition status is relevant, the debtors' ability to currently fund a Chapter 13 plan, standing by itself, is insufficient to justify dismissal for abuse under the "totality of the circumstances theory". The Administrator's motion should be denied and the debtors should be allowed their discharge.

Respectfully submitted this the 17th day of June, 2011.

/s/ Robert F. McLaughlin
ROBERT F. McLAUGHLIN
Attorney for Debtors
122 N. Ellis St.
Salisbury, NC  28144
Telephone #:  (704) 633-2020
Facsimile#:  (704) 633-4053
NC State Bar #:  7875

PARTIES TO BE SERVED:
Case No. 10-52061 C-7W

Robert E. Price, Jr., Esq.
Office of the Bankruptcy Administrator
PO Box 1828
Greensboro, NC  27402