UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT NORTH CAROLINA

In re:                                         )
                                               )
    WILLIAM J. PENNINGER          )     Case No.    10-52061
    LISA M. PENNINGER             )     Chapter 7
                                               )
        Debtors                )
_____)

(Second) MEMORANDUM OF BANKRUPTCY ADMINISTRATOR
IN SUPPORT OF MOTION TO DISMISS

    Now comes the Bankruptcy Administrator, ("BA") by and through Counsel, and submits his (Second) Memorandum in support of his Motion to Dismiss.

1.    <u>Issue Presented.</u>  At the trial of this matter, the parties disputed whether the Court should consider (and/or the weight to be assigned to) the financial situation of the Debtors as of the hearing date.  The Bankruptcy Administrator contended that the Court should not only consider the financial situation of the Debtors as of the hearing date, but should heavily weigh that situation, and post-petition events affecting the debtors, among other factors.  The Debtors contended, on the other hand, that the Court should consider their situation only as it existed on the petition date, or, alternatively, that the court should heavily weigh that situation, among other factors.

    The timing of the analysis is important, because, due to increases in their income, and the decision to abandon their house, leading to a decrease in their monthly expenses, the debtors had significantly more disposable income (and so, ability to pay creditors) as of the hearing date than they did when they filed the petition.

    To the extent relevant and material, the Bankruptcy Administrator incorporates his initial memorandum in this case.

2.    <u>Argument</u>

    *A.    The statutory language indicates that the Court should consider post-petition events in its analysis.*

    The BA brings this Motion under Sections 707(b)(1) and (3), which directs that the court consider whether "the totality of the circumstances... of the debtor's financial situation demonstrates abuse."  The BA contends that the statutory language ("totality of the circumstances") indicates that the court's analysis of the debtor's financial situation is not limited as to time, but necessarily includes the situation on the hearing date, as well as the situation on the filing date and the events both before and after the petition.  "The plain language of section

707(b)(3)(B) requires that the Court evaluate both a debtor's pre and post petition financial position as well as other relevant factors." In re Cascioppo 2008 WL 801307 (Bankr. S.D. Cal. 2008). "Post-petition pre-discharge events are relevant to a Section 707(b)(3)(B) analysis." In re Dowleyne, 400 B. R. 840 (Bankr. Fla. 2008).

Further , by its reference to the rejection of a personal services contract in Section 707(b)(3), which could only be a post-petition event, the statute indicates that post-petition events are relevant to the analysis of abuse under Section 707(b)(3).

Also, the statute refers to whether the "granting of relief", in other words, a discharge, would be abusive. As a discharge is a post-petition event; the reference points to the consideration of post-petition events. Otherwise, Congress might have easily asked the court to consider whether the "filing" was abusive.

> B. *Several cases have held that the court should focus on the financial situation on the hearing date.*

In In re Cardona-Pereira, 2010 WL 500404 (D. N. J. 2010), the Debtors' financial situation improved dramatically shortly after filing; Mr. Pereira, who was unemployed on the petition date, found a job with an annual salary of $150,000. Upon a Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(3), the Debtors argued that their situation at the time of filing controlled. The Court rejected the Debtor's argument, and dismissed the case, holding that the Debtor's financial situation at the time of the hearing was of paramount importance, stating:

> In determining a debtor's ability to pay, a court may consider a debtor's "actual and anticipated financial" ability to repay creditors during a hypothetical chapter 13 commitment period. *Lenton,* 358 B.R. at 664; *see also Pennington,* 348 B.R. at 651. The Trustee bears the burden of proof to show "a debtor's ability to make substantial payment on unsecured debt," after which a debtor must demonstrate he is otherwise entitled to chapter 7 relief. *Lenton,* 358 B.R. at 664-65. The debtor's financial condition is to be considered "at the time of the hearing on the motion to dismiss," which necessarily includes all post-petition events. *Pennington,* 348 B.R. at 651. "There is no indication in the language of the statute or in the legislative history that Congress meant to limit temporally [a][c]ourt's consideration of [a][d]ebtor's financial condition" to the date of filing. *Id.*
>
> *6 The Debtors here argue that the *filing* must be abusive to warrant dismissal under § 707. (Opp'n 10-11). However, the language of § 707(b)(1) states that dismissal is appropriate where "granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. §§ 707(b)(1). "Section 707 does not condition dismissal on the *filing* of bankruptcy being a[n] ["abuse"] but rather on the *granting of relief.*" In re Cortez, 457 F.3d 448, 455 (5th Cir.2006).

In *Pennington,* the debtor had a monthly income deficit on the petition date. *Id.* at 648, 651. Subsequent to filing, the debtor surrendered his car and purchased a less expensive car. *Id* . at 648. As a result, he had $212.71 in disposable monthly income. *Id.* at 651. Consequently, the debtor was able to "repay 42% of his unsecured debt in a three-year plan and 69% of his unsecured debt in a five-year plan." *Id.* at 652. Under these circumstances, the court granted the trustee's motion to dismiss, finding under § 707(b)(3)(B) that granting relief would be an abuse of chapter 7. *Pennington,* 348 B.R. at 652.

In re Cardona-Pereira 2010 WL 500404, 5 -6 (D.N.J.,2010).

As cited by the Cardona-Pereira court, Judge Walrath faced a similar issue in In re Pennington 348 B. R. 647 (Bankr. D. Del. 2006). In that case, the Debtor had surrendered an expensive car post-petition; he argued on a motion to dismiss that the court should only consider his situation when he filed for relief. The court rejected that argument, holding that the Court had to consider the debtor's financial situation at the time of the hearing, and granted the Motion to Dismiss, ruling:

> The question presented to this Court is whether the Court, in considering the "totality of the circumstances ... of the debtor's financial situation" is limited to the Debtor's financial situation as of the date of the filing of the petition or may/must consider the Debtor's financial situation at the time the motion to dismiss is heard.
>
> A ruling that the Court may only consider the Debtor's financial situation at the time of
>
> the filing would cut both ways. If a debtor incurred additional expenses post-petition (for example, he needed a new car or had additional unexpected medical expenses), the Court would not be able to consider it. Such an arbitrary rule is not mandated by the language of the Code, nor does it appear to be reasonable.
>
> Contrary to such a restrictive reading of the Code, the Court concludes that the language
>
> of section 707(b)(3) is very broad and was meant to give the Court substantial leeway to consider all aspects of the Debtor's financial condition. There is no indication in the language of the statute or in the legislative history that Congress meant to limit temporally the Court's consideration of the Debtor's financial condition when determining whether to dismiss a case for abuse. Therefore, the Court concludes that it must consider the Debtor's financial condition at the time of the hearing on the motion to dismiss in determining whether granting chapter 7 relief is an abuse under section 707(b)(3).
>
> This ruling is consistent with the "substantial abuse" cases under former section 707(b).
>
> *See, e.g., Lamanna,* 153 F.3d at 5 (considering debtor's future income and expenses in applying "totality of the circumstances" test); *Green v. Staples (In re Green),* 934 F.2d 568, 572 (4th Cir.1991) (holding that "[e]xploring ... the relation of the debtor's future income to his future necessary expenses, allows the court to determine more accurately

whether the particular debtor's case exemplifies the real concern behind Section 707(b): abuse of the bankruptcy process by a debtor seeking to take unfair advantage of his creditors").

In re Pennington 348 B.R. 647, 651 (Bkrtcy.D.Del.,2006); Accord, In re Richie 353 B. R. 569 (Bankr. E. D. Wis. 2006)("[court] ... must look to the debtor's ability to pay her creditors at the date of the hearing.")(motion to dismiss granted); In re Roppo, 442 B. R. 888 (Bankr. N.D. Ill. 2010)(same).

These cases, then, stand for the proposition that the Court should assign the Debtors' financial situation on the hearing date primary importance. This also makes sense, as it is at the hearing that the court may best assess the Debtors' situation, motivations and credibility.

> C. *Many other cases have held that post-petition changes in income or expense are relevant under Section 707(b)(3).*

As noted in Cardona-Pereira, there is a long line of cases which, although they do not speak directly to the timing of the analysis, hold that prospective post-petition income made available to the debtor by surrendering encumbered assets is properly considered as part of the "totality of the circumstances." See e.g., In re Perelman 419 B. R. 168 (Bankr. E. D. N.Y. 2009)(collecting cases). To consider the debtor's ability to pay after the surrender of the encumbered property is necessarily to weight the post-petition financial situation. In the present case, a large change in the Debtor's financial situation is due to their surrender of their house, and their lower cost housing choices going forward.

Similarly, many other courts have held that general post-petition changes in income or expense should be considered by the court on a motion to dismiss under Section 707(b)(3). See e.g. In re Henebury 361 B. R. 595 (Bankr. S. D. Fla. 2007)(collecting cases); In re Cascioppo 2008 WL 801307 (Bankr. S.D. Cal. 2008); In re Walker 383 B. R. 830 (Bankr. N.D. Ga. 2008). In the present case, both debtors have received small raises post-petition, which increases their ability to pay, although Ms. Penninger appears to be working marginally fewer hours.

This "forward-looking" approach, considering post-petition changes in the debtors' financial condition, is consistent with those cases which hold that in assessing the Debtor's ability to pay, the court should consider a hypothetical chapter 13 plan, which would reach 3 to 5 years in the future. See, e.g. In re Carey, No. 01-12545 (Bankr. M.D.N.C., July 15, 2002)(court considers future income and dividend to creditors in a Chapter 13 Plan); In re Walker 383 B. R. 830 (Bankr. N.D. Ga. 2008)(court measures ability to pay by a hypothetical chapter 13 plan.).

This precedent is in accord with the applicable precedent in this district. In In re Crink, 402 B. R. 159, 173 (Bankr. M.D.N.C. 2009), the court stated that it would look "to the Debtor's future income and expenses, as well as evaluate their financial condition at the time of filing." Accord, In re Carey, supra; In re Lipford, 370 B. R. 320 (Bankr. M.D.N.C. 2008).

These cases, then, stand generally for the proposition that post-petition events should be considered in the evaluation of a Motion to Dismiss under Section 707(b)(3).

> D. *Consideration of post-petition events, with the heaviest weight on the financial situation at the time of hearing, indicates that this case should be dismissed as abusive.*

The Bankruptcy Administrator contended at trial that the totality of the Debtor's financial situation, including post-petition events, indicates that allowing these Debtors to continue in Chapter 7 would be an abuse of that chapter of the Bankruptcy Code. In making this contention, the Bankruptcy Administrator also contends that at the time of filing, the Green factors indicate that this case should be dismissed.

The evidence at trial supports this conclusion. The Debtors' financial situation has improved somewhat since the filing date by small increases in income. Further, by the release of their home and other property, and stabilization of their housing costs, the Debtors' Amended Schedules I and J shows monthly net income of $1407.00. This monthly net income is even after Mr. Penninger increased the rent he pays to his parents as a savings measure, and treated amounts paid to Ms. Penninger as a deduction from joint income (when they should have been a "wash" transaction).

In this case, the unsecured debt is $34,486. The Debtors monthly net income would allow for a 100% payment to unsecured creditors, even allowing for some deficiency on the released home (which is actually estimated to have some equity).

As the Bankruptcy Administrator argued in his initial Memorandum in this matter, many courts have noted that the ability of the Debtors to pay a high percentage of their debt with future earning is indicative of abuse. In re Lipford, supra,, (collecting cases); In re Mondragon, 2007 WL 2461616 ( Bankr. D.N.M. 2007)(debtor's ability to pay 25% or more is "persuasive evidence" of abuse). Further, by incorporating the "secondary" presumption into the analysis under Section 707(b)(2), Congress has indicated that the Debtor's ability to repay at least 25 percent of his debts is significant in the consideration whether the granting of relief would be an abuse.

3.  <u>Conclusion.</u>

For the reasons set forth herein, the BA contends that allowing the Debtors to continue in Chapter 7 would constitute an abuse of the Bankruptcy Code within the meaning of Section 707(b)(3) and this case should be dismissed.

This the _17th_ day of _June_, 2011.

                                                     Michael D. West, Esq.

U.S. Bankruptcy Administrator

By_s/Robert E. Price, Jr.__
Robert E. Price, Jr.
Staff Attorney
State Bar No. 9422

Of Counsel:

Office of the Bankruptcy Administrator
P.O. Box 1828
Greensboro, North Carolina 27402-1828
tel: 336.358.4179
fax:336.358.4185

CERTIFICATE OF SERVICE

This is to certify that on this date, the foregoing document was served upon the following parties or counsel by electronic filing and/or depositing a copy in the United States mail, first class postage prepaid, addressed as follows:

**Robert F. McLaughlin**
122 N. Ellis St.
Salisbury, NC 28144

This the _17th_ day of _June_, 2011.

By_s/Robert E. Price, Jr._

Bankruptcy Administrator
Staff Attorney